```
              UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF WEST VIRGINIA

                         AT CHARLESTON
```

LA-VERNE HARVEY by her
Daughter, and power of attorney,
JEAN HARVEY,

      Plaintiff,
v.                              Civil Action No. 2:17-CV-3010

BAYVIEW LOAN SERVICING LLC, and
THE BANK OF NEW YORK MELLON
d/b/a CWALT Inc. Alternative
Loan Trust 2004-18CB,
through its trustee

      Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is defendants' partial motion to dismiss Count I of the amended complaint, filed on June 23, 2017.

### I. Introduction

On April 24, 2017, La-Verne Harvey ("Ms. Harvey"), by her daughter, and power of attorney, Jean Harvey, instituted this action against Bayview Loan Servicing LLC ("Bayview") and The Bank of New York Mellon d/b/a CWALT Inc. Alternative Loan Trust 2004-18CB ("CWALT") in the Circuit Court of Kanawha County, West Virginia. Bayview and CWALT (together "defendants") timely removed the action to this court invoking federal question jurisdiction over several of the claims asserted in the complaint pursuant to 28 U.S.C. § 1331. Notice

1

of Removal ¶¶ 11-13. Thereafter, defendants filed a partial motion to dismiss on May 25, 2017. Ms. Harvey then filed her amended complaint, as a matter of course under Fed. R. Civ. P. 15(a)(1)(B), prompting defendants to file the partial motion to dismiss Count I of the amended complaint now pending before the court.

The amended complaint alleges nine causes of action against defendants for violations of state and federal law in the owning and servicing of Ms. Harvey's residential mortgage loan. See Am. Compl. ¶¶ 58-89.

Ms. Harvey's mortgage loan was originated in West Virginia in 2004 by Countrywide Home Loan, Inc. ("Countrywide") d/b/a America's Wholesale Lender ("AWL"), neither of which is named as a party to this action. Id. at ¶ 6. At the time of the loan, both Countrywide and AWL were licensed to make residential mortgage loans pursuant to the requirements of the West Virginia Residential Mortgage Lender, Broker, and Servicer Act ("RMLBSA" or "the Act"), W. Va. Code § 31-17. Id. at § 7. In connection with the loan, Ms. Harvey granted AWL a deed of trust on her personal residence. Id. at ¶ 15. In 2010, ownership of Ms. Harvey's loan was transferred to CWALT, which is not licensed by the state of West Virginia under RMLBSA. Id. at ¶ 16. Though the loan was serviced by Bank of America on

behalf of CWALT for a number of years, on September 16, 2015 the servicing of the loan was transferred to Bayview. Id. at ¶¶ 4, 23, 28.

In early 2015, Jean Harvey negotiated an agreement with Bank of America to make up payments that her mother had missed due to her medical bills and disability. Id. at ¶ 19. According to that agreement, Ms. Harvey would make an extra payment and make increased payments for six months, after which the account would be current. Id. at ¶ 20. All of these payments were made until the final one, which was due in September 2015. Id. at ¶ 21. Ms. Harvey alleges that this final payment was tendered but refused by Bank of America and Bayview, both of whom were servicers of the loan for a portion of September 2015. Id. at ¶¶ 21-29.

Having not accepted the payment for September, Bayview informed Ms. Harvey that she had not completed the catch-up agreement, and her mortgage was therefore several months in arrears. Id. at ¶ 30. Bayview further informed Ms. Harvey that hazard insurance had been force-placed on the home because she had not proven maintenance of her own coverage, despite the fact that she maintained proper coverage for decades. Id. at ¶¶ 31-32. Bayview agreed to cancel the force-placed insurance and credit the mortgage for the cost only when her account was made

3

current.  Id. at ¶ 33.  Bayview Asset Manager, Reggie Miller, began contacting Ms. Harvey and Jean Harvey and informed them that Bayview would foreclose the property unless an immediate payment was made in the full outstanding amount.  Id. at ¶¶ 37-39.  In early 2017, Ms. Harvey learned that Bayview had sent the mortgage loan to a trustee for foreclosure sale.  Id. at ¶ 43.  Bayview has failed to offer any loss mitigation alternatives to Ms. Harvey in lieu of foreclosure.  Id. at ¶¶ 41, 57.

Count I is the only count that defendants seek to dismiss.  Plaintiff asks in Count I that the court declare the mortgage loan and deed of trust unenforceable pursuant to W. Va. Code § 31-17-17.  Id. at ¶ 59.  In support of this request, plaintiff states: "West Virginia law prohibits the ownership of a mortgage loan secured by residential real estate located within West Virginia by any person other than one licensed under [RMLBSA], and defendant CWALT is not so licensed," and "[t]he originator, its successors-in-interest, and its servicing agents have and continue willfully to impose fees and charges not expressly permitted by, and/or in excess of those permitted by W. Va. Code § 31-17-8(g) and W. Va. Code § 46A-3-109, including illegal tax service fees, courier fees; and processing fees." Id.  In addition to the declaratory relief, Ms. Harvey further

4

requests that the court "afford all other relief to which she may be entitled in law or equity, including under W. Va. Code § 31-17-17(a) and (b)." Id. at ¶ 60.

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants move to dismiss Count I of plaintiff's amended complaint because it fails to state a claim against defendants upon which relief may be granted. Defs.' Mot. Dismiss at 1.

## II. Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Correspondingly, Rule 12(b)(6) provides that a pleading may be dismissed for a "failure to state a claim upon which relief can be granted."

To survive a motion to dismiss, a pleading must recite "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008)). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation

5

omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 555).

A district court's evaluation of a motion to dismiss is underlain by two principles. First, when considering a motion to dismiss, the court "must accept as true all of the factual allegations contained in the [pleading]." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted); see also Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).") (citations omitted). In doing so, factual allegations should be distinguished from "mere conclusory statements," which are not to be regarded as true. Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Second, the court must "draw[] all reasonable factual inferences . . . in the [nonmovant's] favor." Edwards v. City of Goldsboro, 178 F.3d

231, 244 (4th Cir. 1999); see also Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) ("[T]he complaint is to be liberally construed in favor of plaintiff.").

### III. Analysis

Count I of the amended complaint asks that the court declare the mortgage loan and deed of trust unenforceable pursuant to W. Va. Code § 31-17-17(a), which states "[i]f any primary or subordinate mortgage loan is made in willful violation of the provisions of this article, except as a result of a bona fide error, such loan may be canceled by a court of competent jurisdiction." See Am. Compl. at ¶ 59. As noted, Ms. Harvey further requests in Count I that the court "afford all other relief to which she may be entitled in law or equity, including under W. Va. Code § 31-17-17(a) and (b)." Id. at ¶ 60.

Defendants assert that dismissal of Count I is warranted because (1) W. Va. Code § 31-17-17(a) is unenforceable against those who did not originate the mortgage loan; (2) the loan originator did not violate the RMLBSA; and (3) plaintiff does not assert any claim under W. Va. Code § 31-17-17(c). Defendants' arguments for dismissal will be handled in turn.

A.  Enforceability of W. Va. Code § 31-17-17(a)

Defendants initially sought the dismissal of Count I because "the language of § 17(a) is clear and that section applies only where a primary or subordinate mortgage loan is <u>made</u> in willful violation of the Act," and CWALT "is not the originator of the loan in any sense."  Defs.' Mem. Supp. Mot. Dismiss at 3-4 (emphasis in original).  In support of this analysis, defendants cite <u>Partners for Payment Relief, DE III, LLC v. Odom</u>, No. 12-c-247 (Jefferson County July 9, 2013), Ex. A to Defs.' Mot. Dismiss, <u>aff'd</u>, <u>Odom v. Partners for Payment Relief, DE III, LLC</u>, 2015 W. Va. LEXIS 748, at *7-*8 (2014).  In <u>Odom</u> the Circuit Court of Jefferson County found that Mr. Odom could not raise W. Va. Code § 31-17-17(a) against Partners for Payment Relief ("Partners"):

> While Partners, by taking the assignment became a "lender" as that term is defined in the Act, the fact that Partners is a 'lender' does not result in the defendant's ability to cancel the loan should Mr. Odom prove that there had been a "willful" violation of the Act by Partners because Partners did not make the loan.

<u>Partners for Payment Relief, DE III, LLC v. Odom</u> at 2.

Ms. Harvey correctly responds that although a violation of the act by the defendants would not necessitate the cancellation of the mortgage, "W. Va. Code § 31-17-17(a) does not limit the statutory remedy it creates to application against

8

original lenders, or only to mortgage loans still held by the originating lender." Pl.'s Resp. at 11. Therefore, "[i]f a loan is 'made' by a lender in willful violation of the provisions of Article § 31-17, the statute says any 'court of competent jurisdiction' may declare it void, without restriction as to the current owner of the loan or that owner's involvement or lack of involvement with the origination." Id.

While CWALT did not originate the loan, it did purchase the loan through assignment, and "[a]s a simple matter of contract law, a mortgage loan assignee 'steps into the shoes' of the originating assignor, and thereby becomes subject to all claims and defenses the borrower could have asserted against the originator. Id. at 11-12 (quoting Lightner v. Lightner, 146 W. Va. 1024, 1034, 124S.E.2d 355 (1962)); see also Bishop v. Quicken Loans, No. 2:09-1076, 2010 U.S. Dist. LEXIS 93692 at *10-*11 (W. Va. S.D. Sept. 8, 2010) ("[A] mortgage holder may be liable for the common law and statutory violations of the original lender.") Though the Act is silent on its application to holders of a mortgage made by another, it is well settled that a statute is to be "read in context with the common law unless it clearly appears from the statute that its purpose was to change the common law." Holsten v. Massey, 200 W. Va. 775,

786, 490 S.E.2d 864, 875 (1997). Accordingly, dismissal of Count I is not warranted merely because defendants were not the originator of the loan.

B.  Violations of RMLBSA

Plaintiff alleges in Count I that Countrywide willfully violated W. Va. Code § 31-17-8(c) "by charging fees and settlement costs not permitted by, or in excess of the amount permitted by, W. Va. Code § 31-17-8(g) and § 46A-3-109(a)." Am. Compl. ¶ 13. Specifically, she contends that Countrywide charged the following fees in violation of the RMLBSA:

   (1)  $18.00 credit report fee paid to "Landsafe," a wholly owned subsidiary of Countrywide;

   (2)  $60.00 tax service fee paid to Countrywide's own tax service department;

   (3)  $75.00 for "courier/express mail;"

   (4)  $252.00 as a "broker origination fee;"

   (5)  $5.00 as a "Division of Banking fee"; and

   (6)  $440.00 as a "Broker Processing Fee."

<u>Id.</u>  Defendants claim that all of these fees were expressly authorized by statute and are not violations of the RMLBSA. Defs.' Reply at 2.

The parties differ in their interpretation of W. Va. Code § 31-17-8(c), which provides, in pertinent part, that

> [e]xcept as provided by [§ 46A-3-109] and by [§ 31-17-8(g)], no additional charges may be made, nor may any charge permitted by this section be assessed unless the loan is made.

Understanding this provision requires a review of the statutory definitions and of the referenced statutes. "Additional charges" are defined as

> every type of charge arising out of the making or acceptance of a primary or subordinate mortgage loan, except finance charges, including, but not limited to, official fees and taxes, reasonable closing costs and certain documentary charges and insurance premiums and other charges which definition is to be read in conjunction with and permitted by [§ 46A-3-109].

W. Va. Code § 31-17-1(a). Section 46A-3-109 states that

> [i]n addition to the sales finance charge or loan finance charge permitted by this chapter, a creditor may contract for and receive the following additional charges in connection with a consumer credit sale or a consumer loan:
> 
>    (1)   Official fees and taxes;
> 
>    (2)   Charges for insurance . . . ;
> 
>    . . .
> 
>    (5)   Reasonable closing costs with respect to a debt secured by an interest in land; and
> 
>    (6)   Documentary charge or any other similar charge for documentary services in relation to securing a title, so long as . . . there is a reasonable relationship between said charge and the benefit conferred on the customer.

Id. at § 46A-3-109(a). Finally, § 31-7-8(g) provides that

> [e]xcept for fees for services provided by
> unrelated third parties for appraisals,
> inspections, title searches and credit reports,
> no application fee is allowed whether or not the
> mortgage loan is consummated.

Id.

Defendants argue that Count I fails as a matter of law because all of the charges raised in the amended complaint are "closing costs" expressly authorized by § 46A-3-109 and § 31-17-8(g). Defs.' Reply at 3. It may be that many of the charges alleged as impermissible should ultimately be classified as acceptable "closing costs," but for the most part it remains too uncertain at this stage, prior to the benefits of discovery and evidentiary development, as to how those charges should be treated.

Even if "recovery is very remote and unlikely" a well-pleaded complaint may survive a motion to dismiss. Twombly 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). The question is "not whether [the plaintiff] will ultimately prevail . . . but whether [her] complaint was sufficient to cross the federal court's threshold." Skinner v. Switzer, 562 U.S. 521, 529-30 (2011). Ms. Harvey's complaint sufficiently alleges that various charges were made in violation of the RMLBSA, but the minimal descriptions and listing of fees

out of the context of the entire mortgage loan are not clearly permissible or impermissible at this juncture. Accordingly, defendants' motion to dismiss Count I on the ground that the RMBLSA has not been violated is denied.

C. Claim under W. Va. Code § 31-17-17(c)

The amended complaint requests that the court grant the plaintiff "all other relief to which she may be entitled in law or equity, including under W. Va. Code § 31-17-17(a) and (b)." Am. Compl. at ¶ 60. In her response, plaintiff raises her right to relief under W. Va. Code § 31-17-17(c) for the first time. See Pl.'s Resp at 13. Ms. Harvey claims that the amended complaint contained "a typographical error without actual significance" and that "the intended reference was to W. Va. Code § 31-17-17(a) and (c)." Id. at 2 n. 1.

Notwithstanding the fact that W. Va. Code § 31-17-17(c) entitles a borrower to "damages, reasonable attorneys fees and costs," relief not requested or referenced by plaintiff in Count I, the proper vehicle to correct mistakes in a complaint is by amendment. Should plaintiff wish to pursue this claim for defendants' alleged violations of the RMLBSA, she should seek leave of the court to do so pursuant to Fed. R. Civ. P.

15(a)(2). In view of plaintiff's admission that she did not wish to assert a claim under W. Va. Code § 31-17-17(b), defendants' motion to dismiss as to that portion of Count I is granted.

IV. Conclusion

Based upon the foregoing discussion, it is ORDERED that the defendants' motion to dismiss be, and hereby is, denied as to Count I, inasmuch as it relates to W. Va. Code § 31-17-17(a). It is further ORDERED that the defendants' motion to dismiss be, and hereby is, granted as to the portion of Count I that concerns W. Va. Code § 31-17-17(b).

Finally, it is ORDERED plaintiff is permitted to amend her complaint to include a claim under W. Va. Code § 31-17-17(c), should she wish to do so. Any amended complaint should be filed by April 13, 2018 and should be limited solely to the alteration of Count I to seek relief under the correct section.

The Clerk is directed to transmit copies of this order to counsel of record and any unrepresented parties.

ENTER: March 28, 2018

John T. Copenhaver, Jr.
United States District Judge